UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEWIS HENRY MCCLAINE-BEY #165012,   Case No. 2:20-cv-162

        Plaintiff,   Hon. Paul L. Maloney
                                                   U.S. District Judge

v.

UNKNOWN BURY, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

## I.   Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for partial summary judgment based on Plaintiff's failure to exhaust his administrative remedies.  (ECF No. 20.)

Plaintiff in this case – state prisoner Lewis Henry McClaine-Bey – initiated this suit pursuant to 42 U.S.C. § 1983 on September 1, 2020.  In his verified complaint, McClaine-Bey alleges that while he was confined at Kinross Correctional Facility (KCF) in Kincheloe, Michigan, five KCF employees retaliated against him in violation of his First Amendment rights.  (ECF No. 1.)  Specifically, he alleges that: (1) Corrections Officer (CO) Renard issued him false retaliatory work evaluations on two occasions, (2) CO Bury issued him a false retaliatory misconduct ticket, and (3) Deputy Warden (DW) Brown, Librarian Li, and Transportation Coordinator (TC) Woods initiated a retaliatory transfer.

Defendants now assert that McClaine-Bey did not properly exhaust his administrative remedies with regards to his second claim against CO Renard or his retaliatory transfer claim. (ECF No. 21, PageID.107.) According to Defendants, McClaine-Bey did not pursue a grievance concerning CO Renard's second retaliatory work evaluation through all steps of the grievance process, and the grievances concerning his retaliatory transfer were rejected as untimely at Steps II and II. (*Id.*)

The undersigned recommends that this Court deny Defendants' motion because there are genuine issues of material fact regarding (1) whether the grievance pertaining to McClaine-Bey's second claim against CO Renard was resolved and therefore exhausted at Step I, and (2) whether McClaine-Bey had a valid reason for untimely filing his Step II appeals concerning retaliatory transfer, rendering the Step II rejection improper pursuant to MDOC P.D. 03.02.130 ¶ J(5).

## II. Summary of McClaine-Bey's Claims

McClaine-Bey's specific claims are set forth in the table below.

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | CO Renard | 1st Amendment Retaliation (False Work Evaluation) | September 15, 2017 | McClaine-Bey was working in the law library, assisting another prisoner with his legal writing, when CO Renard asked him if he had any clients scheduled for the day. (ECF No. 1, PageID.3.) McClaine-Bey informed Renard that he did not but was still scheduled to work. (*Id.*) When CO Renard told McClaine-Bey to leave and that he did not want to see McClaine-Bey helping more prisoners with their legal work, McClaine-Bey told Renard he would be writing a grievance against him. (*Id.*, PageID.3-4.) CO Renard responded that he would write McClaine-Bey up and get him fired. (*Id.*, PageID.4.) Renard then wrote McClaine-Bey a false work assignment evaluation. (*Id.*, PageID.5.) |

| Claim Number | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 2 | CO Bury | 1st Amendment Retaliation (False Misconduct) | May 17, 2018 | McClaine-Bey was working in the law library when CO Bury told him to get off of the computer and leave. (*Id.*, PageID.5-6.) McClaine-Bey informed Bury that he was a legal writer. (*Id.*, PageID.6.) CO Bury told McClaine-Bey that she did not care if he was a legal writer because she did not give him permission to work. (*Id.*) McClaine-Bey informed CO Bury that he would be writing a grievance against her for her arbitrary conduct. (*Id.*) As McClaine-Bey left, CO Bury stopped him, asked for his identification, and stated "I don't like your attitude and I didn't like that you wrote that grievance on Officer Renard, I'm going to get you fired!" (*Id.*) The same day, CO Bury wrote McClaine-Bey a retaliatory misconduct ticket for destruction or misuse of government property. (*Id.*, PageID.7.) |
| 3 | CO Renard | 1st Amendment Retaliation (False Work Evaluation) | April 12, 2019 | McClaine-Bey was scheduled to conduct legal research in the library. (*Id.*) The librarian had placed a sign on one of the computers to reserve it for McClaine-Bey. (*Id.*) CO Renard removed and discarded the sign. (*Id.*) After McClaine-Bey complained, CO Renard asked why the computer needed to be reserved for his use, and McClaine-Bey explained that he needed it for work. (*Id.*) CO Renard told McClaine-Bey that as long as Renard was working, computers would not be reserved for the legal writer. (*Id.*) McClaine-Bey then wrote a grievance against CO Renard for abuse of authority and retaliation. (*Id.*) CO Renard filed another false work evaluation against McClaine-Bey. (*Id.*) |
| 4 | Librarian Li, DW Brown, TC Woods | First Amendment Retaliation (Transfer) | January 14-16, 2020 | McClaine-Bey requested photocopies to help him with his work duties. (*Id.*, PageID.10.) After Librarian Li denied the request, McClaine-Bey said that he would be filing a grievance against Li for denying him access to the courts. (*Id.*) Librarian Li responded that he would have McClaine-Bey transferred to remove him from his legal writing position. (*Id.*) Li contacted DW Brown and TC Woods about drafting a transfer order. (*Id.*) The next day, TC Woods drafted a transfer order, and another day later, Li filed a false work evaluation against McClaine-Bey. (*Id.*) |

3

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

---

[1] Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

4

The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion

procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Department of Corrections (MDOC) Policy Directive (P.D.) 03.02.130 sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.[2] Inmates must first attempt to resolve a grievable

---

[2]   Here, two different versions of P.D. 03.02.130 control because some of McClaine-Bey's grievances were filed prior to its most recent revision on March 18, 2019, and some were filed after. For the sake of consistency, the undersigned cites to the most recent version of the P.D., effective March 18, 2019, noting that the differences between the versions are immaterial under the facts of this case.

issue informally within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. MDOC P.D. 03.02.130 ¶ Q (effective March 18, 2019). If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

7

after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. When the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Ky. Dept. of Corr.*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit. For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct,[3] the inmate must raise the issue during the

---

[3] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.105 ¶ B (effective April 9, 2012, superseded on July 1, 2018).

initial misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011) ("This grievance relates to the issuance of major misconduct reports, and Michigan's rules provide that the only avenue for challenging such reports is a hearing . . . .").[4]

If the inmate claims to have received a retaliatory Class I misconduct, he must then file submit a Request for Rehearing raising the retaliation issue. *Id.* at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (effective April 9, 2012, superseded on July 1, 2018) (setting forth the Class I misconduct appeal process). Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *report and recommendation adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

---

[4] The undersigned acknowledges that in an unpublished opinion written the same year as *Siggers*, the Sixth Circuit stated that "[a]s distinct from the outcomes of misconduct hearings, the filing of retaliatory misconduct reports is grievable under MDOC Policy Directive 03.02.130." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 501 (6th Cir. 2011). Because published decisions bind this Court, and *Reynolds-Bey* is not a published decision, the undersigned need not resolve this conflict. 6 Cir. R. 32.1(b); *see also Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished opinions are, of course, not binding precedent on subsequent panels . . . but their reasoning may be 'instructive' or helpful." (citation omitted)). *Siggers* controls. However, if the MDOC responds to a grievance concerning a retaliatory misconduct ticket on its merits, it waives the enforcement of this procedural rule. *Reed-Bey,* 603 F.3d at 325; *Colvin v. Washington*, No. 2:18-CV-150, 2019 WL 8138042, at *5 (W.D. Mich. Nov. 26, 2019), *report and recommendation adopted*, No. 2:18-CV-150, 2020 WL 1043862 (W.D. Mich. Mar. 4, 2020).

9

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

## V. Summary of McClaine-Bey's Grievances

Upon review of McClaine-Bey's Step III Grievance Report, McClaine-Bey appealed four relevant grievances through Step III of the grievance process. (ECF No. 21-3.) McClaine-Bey asserts that an additional grievance was at least partially resolved at Step I. (ECF No. 1, PageID.7.) Those grievances are identified in the table below.

---

[5] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

| Grievance No. | Person(s) Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 | Step III Response Mailed (Date) |
|---|---|---|---|---|---|---|---|
| KCF-17-09-0778-2B (ECF No. 21-3, PageID.145-150.) | CO Renard | CO Renard filed a retaliatory work evaluation after McClaine-Bey told Renard he would be filing a grievance against him. | September 15, 2017 | Denied | Denied | Denied | November 22, 2017 |
| KCF-18-06-0444-17b (ECF No. 21-3, PageID.130-134.) | CO Bury | Bury filed a retaliatory misconduct against McClaine-Bey for threatening to file a grievance. | May 17, 2018[6] | Denied | Denied | Denied | August 6, 2018 |
| KCF-19-04-281-14z[7] (ECF No. 1, PageID.7.) | CO Renard | CO Renard filed a retaliatory work evaluation after McClaine-Bey told Renard he would be filing a grievance against him. | April 12, 2019 | Unclear; at least partially resolved[8] | N/A | N/A | N/A |

---

[6] On his Step I grievance form McClaine-Bey listed the date of incident as May 31, 2018, but in the contents of the grievance he complained of the May 17, 2019 incident with CO Bury.  (*See* ECF No. 21-3, PageID.133.)

[7] This grievance was not provided by either party.  Instead, the table reflects the information contained in McClaine-Bey's verified complaint.

[8] While McClaine-Bey asserts that the grievance was partially resolved, it is unclear whether the grievance was marked partially resolved, or McClaine-Bey is asserting that the issue persisted beyond the resolution of the grievance.  If it was marked partially resolved, it is unclear what issues within the grievance remained unresolved.

11

| Grievance No. | Person(s) Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 | Step III Response Mailed (Date) |
|---|---|---|---|---|---|---|---|
| KCF-20-03-229-28E (ECF No. 21-3, PageID.127-129.) | Librarian Li, DW Brown, TC Woods | Li, Brown, and Woods transferred McClaine-Bey to retaliate against him for saying he would file a grievance against Li.[9] | January 14, 2020 | Unclear, Step I form was not in MDOC's system | Rejected as Untimely | Rejection Upheld | July 15, 2020 |
| KCF-20-03-0230-28E (ECF No. 21-3, PageID.124-126.) | Librarian Li, DW Brown, TC Woods | Li, Brown, and Woods transferred McClaine-Bey to retaliate against him for saying he would file a grievance against Li.[10] | January 14, 2020 | Unclear, Step I form was not in MDOC's system | Rejected as Untimely | Rejection Upheld | July 15, 2020 |

Neither party provided the Court with records of McClaine-Bey's hearing reports or associated appeals, nor do Defendants argue they are relevant under the circumstances of this case.

## VI. Analysis

Defendants concede that McClaine-Bey properly exhausted his claim against CO Renard for filing a retaliatory negative work evaluation on September 15, 2017, and his claim against CO Bury for issuing a retaliatory negative work evaluation (Claims 1 and 2 in the claims summary chart above). (ECF No. 21, PageID.106-107.)

---

[9] These were the allegations made in McClaine-Bey's Step II appeal. (ECF No. 21-3, PageID.128.) McClaine-Bey's Step I grievance was not provided by either party.
[10] These were the allegations made in McClaine-Bey's Step II appeal. (*Id.*, PageID.125.) McClaine-Bey's Step I grievance was not submitted by either party.

Therefore, the undersigned is tasked with determining whether there are genuine issues of fact concerning the exhaustion of McClaine-Bey's claims against CO Renard for issuing a retaliatory negative work evaluation on April 12, 2019, and against Librarian Li, DW Brown, and TC Woods for retaliatory transfer (Claims 3 and 4 in the summary chart).

As an initial matter, the undersigned notes that McClaine-Bey did not respond to Defendants' motion. However, the lack of response alone does not warrant a grant of summary judgment. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). Instead, the Court must "examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Id.* (citing *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).

The undersigned turns first to McClaine-Bey's claim against CO Renard for issuing a retaliatory work evaluation on April 12, 2019. In his verified complaint, McClaine-Bey indicated that he filed grievance KCF-19-04-281-14z in response to the April 12 incident. (ECF No. 1, PageID.7.) Defendants argue that because McClaine-Bey did not pursue this grievance, or any relevant grievance, through Step III of the process, he did not properly exhaust this retaliation claim. (ECF No. 21, PageID.107.) However, McClaine-Bey indicated in his complaint that the grievance was at least "partially resolved" at Step I. (ECF No. 1, PageID.7.) A grievance resolved at Step I is exhausted because MDOC P.D. 03.02.130 only contemplates an appeal to Step II when a prisoner is dissatisfied with the Step I response. *Braddock v. Crompton*, No.

13

1:10-CV-731, 2015 WL 6040307, at *2 (W.D. Mich. Oct. 15, 2015); *see also Manning v. Dolce*, No. CIV.A09-13840, 2010 WL 3515718, at *3 (E.D. Mich. July 12, 2010), *report and recommendation adopted*, No. 09-CV-13840-DT, 2010 WL 3515715 (E.D. Mich. Sept. 8, 2010). Although it is unclear exactly what McClaine-Bey meant by "partially resolved," the Defendants have not provided the Step I form or otherwise shown that the retaliation issue was unresolved, necessitating appeal. Construing the facts in the light most favorable to McClaine-Bey, the undersigned concludes that there is a genuine issue of material fact concerning the resolution of KCF-19-04-281-14z at Step I of the grievance process, thus precluding summary judgment as to this claim.

Turning then to McClaine-Bey's retaliatory transfer claim against Librarian Li, DW Brown, and TC Woods, Defendants argue that McClaine-Bey did not properly exhaust his administrative remedies because the relevant grievances, which were nearly identical, were rejected as untimely at Steps II and III. McClaine-Bey's Step II and III Appeal Form for grievance KCF-20-03-230-28E is shown below, with the Step II response.

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE APPEAL FORM**

4835-4248 5/09
CSJ-247B

Date Received by Grievance Coordinator at Step II: _____

Grievance Identifier: KCF 2003 | 230 28E

**INSTRUCTIONS:** THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) **MUST** be attached to the white copy of this form if you appeal it at both Step II and Step III.

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: KCF Warden Office by 3/27/2020. If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Lewis McClaine Bey | #165012 | KCF | G-1-45 | 1/14/20 | 4/13/20 |

**STEP II** — Reason for Appeal: I was transferred from KCF to RMI, I never received my step 1 grievance form back from the grievance coordinator and I never received a timely reply. I received this step 2 grievance form on 4/10/20 through intradepartment mail (PD 03.02.130(S)). I was not given due process and I was given a retaliatory transfer by Librarian Q. Li and the Transfer Coordinator and Deputy Warden because I told Lib Li I would write a grievance on him and complain to Deputy Warden Brown.

**STEP II** — Response

Date Received by Step II Respondent:

Respondent's Name (Print) | Respondent's Signature | Date

Date Returned to Grievant: 4/27/2020

**STEP III** — Reason for Appeal: Under PD 03.02.130 (J)(S) the grievance shall not be rejected if there is a valid reason for the delay. as. Transfer. The retaliatory transfer from KCF to RMI was presented in step 1 and step 2. The grievance was sent by intradepartment mail under PD 03.02.130 (S). KCF Grievance Coordinator M. Gustafson, never returned my step 1 grievance for step 2 and step 3. Instruct KCF G.C. M Gustafson to send me my step 1 and to send you step 1 to stop hindering the exhaustion process.

NOTE: Only a copy of this appeal and the response will be returned to you.

**STEP III** — Director's Response is attached as a separate sheet.

(ECF No. 21-3, PageID.125.)

> STEP II GRIEVANCE RESPONSE FOR PRISONER **MCCLAINE BEY, #165012, RMI**
>
> Grievance **KCF 20 03 230 28 E** has been reviewed.
>
> The Step II Respondent is rejecting this grievance in accordance with PD 03.02.130, Prisoner/Parolee Grievances. The completed Step II form must be submitted to the Step II Grievance Coordinator within 10 business days of receiving the Step I response or if no response was received, within 10 business days of the due date of the Step I response, including extensions.
>
> At Step II the grievance identifier code has been changed to reflect the untimely filing. Any future reference to this grievance should utilize the new identifier: **KCF 20 03 230 28 E**
>
> _____     4/24/2020
> Mike Brown, A/Warden                  Date
>
> MB/sl

(*Id.*, PageID.126.) In his Step II appeal, McClaine-Bey explained that he was transferred, and never received a response to his Step I grievance. In his Step III appeal, McClaine-Bey asserts that the Step II rejection was improper under MDOC P.D. 03.02.130 ¶ J(5). As indicated by McClaine-Bey, MDOC P.D. 03.02.130 ¶ J(5) provides that an untimely grievance "shall not be rejected if there is a valid reason for the delay; e.g., transfer." This Court has previously determined that these circumstances give rise to a genuine issue of material fact concerning the validity of the delay under MDOC P.D. 03.02.130 ¶ J(5). *Bradford v. Isard*, No. 2:15-CV-119, 2016 WL 4144248, at *2 (W.D. Mich. Aug. 4, 2016). A reasonable jury could find that MDOC policy precluded the Step II Respondent from rejecting McClaine-Bey's grievances as untimely, and therefore that McClaine-Bey properly exhausted his claim. *Id.* Accordingly, the undersigned recommends that Defendants are not entitled to summary judgment as to this claim.

## VII. Recommendation

The undersigned respectfully recommends that this Court deny Defendants' motion for partial summary judgment (ECF No. 20) because there are genuine issues of material fact concerning the exhaustion of McClaine-Bey's retaliation claims against CO Renard, DW Brown, Librarian Li, and TC Woods.

If the Court accepts this recommendation, all of McClaine-Bey's claims will remain.

Dated:   January 18, 2022                     /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).