UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEWIS HENRY MCCLAINE-BEY #165012,          Case No. 2:20-cv-162

                    Plaintiff,              Hon. Paul L. Maloney
                                            U.S. District Judge
        v.

UNKNOWN BURY, et al.,

                    Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment (ECF No. 55) and Plaintiff's motion to amend (ECF No. 61).

Plaintiff state prisoner Lewis Henry McClaine-Bey initiated this suit pursuant to 42 U.S.C. § 1983 on September 1, 2020. In his verified complaint, McClaine-Bey alleged that while confined at Kinross Correctional Facility (KCF) in Kincheloe, Michigan, five KCF employees retaliated against him in violation of his First Amendment rights. (ECF No. 1.) Specifically, he alleged that: (1) Corrections Officer (CO) Unknown Renard issued him false retaliatory work evaluations on two occasions, (2) CO Unknown Bury issued him a false retaliatory misconduct ticket, and (3) Librarian Yubao Li issued a retaliatory false work evaluation and, together

with Deputy Warden (DW) Mike Brown and Transportation Coordinator (TC) Kylie Woods,[1] initiated a retaliatory transfer.

Defendants now move for summary judgment as to all of McClaine-Bey's claims. (ECF No. 55.) Defendants first argue that the Court should dismiss McClaine-Bey's claims against CO Renard and CO Bury because the COs did not take adverse actions against McClaine-Bey. Defendants say that the work evaluations that CO Renard issued did not constitute adverse actions because CO Renard merely recommended the close supervision of McClaine-Bey. (ECF No. 56, PageID.289-290.) And Defendants say that the misconduct ticket that CO Bury authored against McClaine-Bey did not constitute an adverse action because CO Bury's allegations were technically true even though the ticket was ultimately dismissed. (*Id.*, PageID.295-298.) Defendants then argue that even if Defendants took adverse actions against McClaine-Bey, the Court should dismiss all of McClaine-Bey's claims because he cannot prove that retaliatory motive was the but-for cause of the adverse actions. (*Id.*, PageID.291-295, 296-300.) Defendants finally argue that they are entitled to qualified immunity because they did not violate McClaine-Bey's clearly established rights by retaliating against him. (*Id.*, PageID.300-301.)

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment as to McClaine-Bey's claims against CO Renard and deny Defendants' motion for summary judgment as to McClaine-Bey's claims against

---

[1]    Kylie Woods is now Kylie Schwiderson. (*See* ECF No. 56-13 (Affidavit of Kylie Schwiderson).)  For the purposes of this R&R, the undersigned will refer to Schwiderson by her former name of Woods.

CO Bury, Librarian Li, DW Brown, and TC Woods.  There are no genuine issues of material fact with respect to McClaine-Bey's claims against CO Renard; the work evaluations that CO Renard authored with respect to McClaine-Bey had no discernible impact on McClaine-Bey and therefore did not constitute adverse actions. However, there are genuine issues of material fact with respect to McClaine-Bey's claims against CO Bury, Librarian Li, DW Brown, and TC Woods.

The undersigned further recommends that the Court grant McClaine-Bey's motion to amend his complaint, with the caveat that permitting the amendment would not revive McClaine-Bey's claims against CO Renard.

## II.    Factual Allegations

During the time relevant to his claims, McClaine-Bey worked as a legal writer at KCF.  (ECF No. 1, PageID.3.)  Almost immediately after he arrived at KCF in January of 2017,[2] McClaine-Bey says that he started having problems with Defendant CO Bury.  In one instance, Defendant CO Bury called McClaine-Bey out for always being the last to leave the library and told McClaine-Bey that he could be not alone with KCF Librarian Regina Kemp.  McClaine-Bey asked Bury for the written policies forbidding him from being the only legal writer in the library with Kemp and Bury replied by stating that it was an unwritten rule.  (*Id.*)  McClaine-Bey says that he spoke to Kemp and another CO about the incident.  CO Bury also discussed the incident with Defendant CO Renard.  Ultimately, it seemed that the

---

[2]    McClaine-Bey's complaint initially stated that he arrived at KCF in January of 2013.  (ECF No. 1, PageID.3.)  But later in his complaint, he explains that he got to the facility in January of 2017.  (*Id.*, PageID.10.)

problem was resolved; CO Bury did not comment on McClaine-Bey working alone with Librarian Kemp from that point on. (*Id.*)

On September 15, 2017, McClaine-Bey says that he was scheduled to do legal research on a KCF computer for his prisoner-clients when he was approached by a prisoner who was not in the legal program. The prisoner asked McClaine-Bey for help using the computer. McClaine-Bey says that CO Renard approached the men and asked McClaine-Bey if he had any clients scheduled for the day. (*Id.*, PageID.3.) McClaine-Bey informed Renard that he did not but that he was still scheduled to work. (*Id.*) CO Renard then told McClaine-Bey to leave, and that he did not want to see McClaine-Bey helping any more prisoners with their legal work. (*Id.*) The two began to argue, with McClaine-Bey eventually telling CO Renard that he would be writing a grievance against him. (*Id.*, PageID.3-4.) CO Renard responded by saying that he would write up McClaine-Bey and get him fired. (*Id.*, PageID.4.) Renard then wrote McClaine-Bey a false work assignment evaluation. (*Id.*, PageID.5.) That evaluation stated that McClaine-Bey was giving unauthorized legal assistance to prisoners in the general population's law library. (*Id.*)

McClaine-Bey next alleges that on May 17, 2018, he was working as a legal writer when CO Bury approached him and told him to get off of the computer and leave. (*Id.*, PageID.5-6.) McClaine-Bey informed Bury that he was a legal writer. (*Id.*, PageID.6.) CO Bury told McClaine-Bey that she did not care if he was a legal writer because she did not give McClaine-Bey permission to work. McClaine-Bey then informed CO Bury that he would be writing a grievance against her for her

arbitrary conduct.  (*Id.*)  As McClaine-Bey left, CO Bury stopped him, asked for his identification, and stated "I don't like your attitude and I didn't like that you wrote that grievance on Officer Renard, I'm going to get you fired!"  (*Id.*)  The same day, CO Bury wrote McClaine-Bey a retaliatory misconduct ticket for destruction or misuse of government property wherein Bury alleged that McClaine-Bey had been using a computer in the law library without authorization.  (*Id.*, PageID.7.)

McClaine-Bey then says that on April 12, 2019, he was scheduled to conduct legal research in the library.  (*Id.*)  The librarian had placed a sign on one of the computers to reserve it for McClaine-Bey.  CO Renard removed and discarded the sign.  (*Id.*)  After McClaine-Bey complained, CO Renard asked why the computer needed to be reserved for his use, and McClaine-Bey explained that he needed it for work.  CO Renard told McClaine-Bey that as long as Renard was working, computers would not be reserved for the legal writer.  (*Id.*)  McClaine-Bey then wrote a grievance against CO Renard for abuse of authority and retaliation.  In response, CO Renard filed another false work evaluation against McClaine-Bey.  (*Id.*)

McClaine-Bey next alleges that on an unspecified occasion after Defendant Yubao Li took over as the KCF Librarian, he requested legal photocopies from Li. When Li refused to make the photocopies, McClaine-Bey told Li that he would file a grievance against Li for denying McClaine-Bey access to courts.  (*Id.*, PageID.9.) McClaine-Bey says that Li called Defendant DW Brown, and that DW Brown then called McClaine-Bey to his office.  While there, McClaine-Bey told Brown about Li refusing to make photocopies, thereby denying McClaine-Bey access to Courts.  (*Id.*)

McClaine-Bey says that DW Brown asked if McClaine-Bey "was going to be a problem."  McClaine-Bey said that he was not, and DW Brown ultimately had Li provide McClaine-Bey with the requested photocopies.  (*Id.*)

McClaine-Bey finally asserts that on January 14, 2020, he requested legal photocopies from Librarian Li for a second time.  (*Id.*, PageID.10.)  After Librarian Li denied the request, McClaine-Bey threatened to file another grievance against Li. Librarian Li responded by stating: "I'm not Officer Bury, I will have you transferred to remove you from your job."  (*Id.*)  Li contacted DW Brown and TC Woods about drafting a transfer order.    On January 15, 2020, TC Woods drafted a retaliatory transfer order stating that McClaine-Bey was being transferred to create bed space for incoming prisoners.  (*Id.*)  And on January 16, 2020, Li filed a false work evaluation against McClaine-Bey, stating that "[t]here were complaints that McClaine was coercing prisoners to do other prisoners' legal work."  (*Id.*)

## III.    Defendants' Motion for Summary Judgment (ECF No. 55)

Because Defendants' motion for summary judgment is fully briefed, the undersigned first addresses Defendants' motion for summary judgment in relation to McClaine-Bey's original complaint.  The undersigned then considers whether allowing McClaine-Bey to amend his complaint at this stage of the case serves the interests of justice.

### a.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### b.  Retaliation Analysis

McClaine-Bey asserts that Defendants retaliated against him in violation of his First Amendment rights.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct.  *Id.*

McClaine-Bey's retaliation claims are summarized in the table below:

| Claim No. | Defendant | Alleged Protected Conduct | Alleged Adverse Action | Evidence of Causal Connection |
|---|---|---|---|---|
| One | CO Renard | September 15, 2017 threat to file a grievance. | September 15, 2017 work evaluation. | When McClaine-Bey threatened to file a grievance against Renard, Renard responded by saying that he would write McClaine-Bey up and get him fired. |
| Two | CO Bury | September 2017 grievance against CO Renard, May 17, 2018 threat to file a grievance. | May 17, 2018 misconduct ticket. | After McClaine-Bey threatened to file a grievance against Bury, Bury stated: "I don't like your attitude and I didn't like that you wrote that grievance on Officer Renard, I'm going to get you fired!" |
| Three | CO Renard | April 12, 2019 complaints to prison staff, April 12, 2019 grievance. | April 12, 2019 work evaluation. | Renard wrote the work evaluation after McClaine-Bey complained to prison staff and filed his grievance. |
| Four | Librarian Li, TC Woods, DW Brown | Undated threat to file a grievance against Li and discussion with DW Brown, January 14, 2020 threat to file a grievance. | January 15, 2020 transfer order and January 16, 2020 work evaluation. | After McClaine-Bey threatened to file a grievance against Li, Li responded: "I'm not Officer Bury, I will have you transferred to remove you from your job." |

The undersigned analyzes each of McClaine-Bey's retaliation claims in turn.

### i. Claim One – Retaliatory Work Evaluation (CO Renard)

McClaine-Bey first alleges that after CO Renard told him to leave the library on September 15, 2017, McClaine-Bey threatened to file a grievance against Renard. (ECF No. 1, PageID.3.)  According to McClaine-Bey, Renard responded by stating that he would write McClaine-Bey up and get him terminated from his position as a legal writer. (*Id.*, PageID.4.)  On the same date, CO Renard wrote McClaine-Bey a negative work evaluation. (*Id.*, PageID.5.)

In moving for summary judgment, Defendants do not contest that McClaine-Bey's threat to file a grievance constituted protected conduct. (ECF No. 56, PageID.291.)  However, Defendants argue that the work evaluation was not an adverse action, as it did not recommend termination.  (*Id.*, PageID.289-290.) Defendants further assert that CO Renard would have written the work evaluation regardless of McClaine-Bey's threat to file a grievance, negating the causation element of McClaine-Bey's retaliation claim. (*Id.*, PageId.291-295.)

To establish the second element of a retaliation claim, a prisoner-plaintiff must show an adverse action by a prison official that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "capable of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Defendants argue that the work evaluation that CO Renard issued McClaine-Bey on September 15, 2017 was *de minimis* – it did not have any impact on McClaine-Bey, CO Renard merely recommended that McClaine-Bey be closely supervised. (ECF No. 56, PageID.290.)   The September 15, 2017 work evaluation is shown below.



| | | | | | | |
|---|---|---|---|---|---|---|
| CSJ-363 REV. 09/06 4835-3363 | | | | | | |

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION**

| Prisoner Name (last) (first) (middle initial) | Prisoner No. 165012 | Lock No. G-1-45 | Institution Code KCF |
|---|---|---|---|
| McClaine Bey | | | |
| Assignment Name | Assignment No. | Date Assigned 1/12/17 | Date Evaluated 9/15/17 |
| Legal Writer | | | |
| Assignment Classification: ☐ Student ☐ Unskilled ☐ Semi-Skilled ☐ Skilled ☐ Other | Race NW | Date Terminated | Will Take Back ☐ Yes ☐ No |

| Circle the number beside each statement which describes the prisoner's work/school assignment performance: | 3 or more exceptions | 1-2 exceptions | No exceptions |
|---|---|---|---|
| 1. The prisoner was on time. | 0 | 2 | 3 |
| 2. The prisoner came on the correct days. | 0 | 2 | 3 |
| 3. The prisoner followed all safety rules. | 0 | 2 | 3 |
| 4. The prisoner followed all other rules. | 0 | 2 | 3 |
| 5. The prisoner followed the assignment authority's instructions. | 0 | 2 | 3 |
| 6. The prisoner cooperated with the assignment authority, followed the working chain of command and refrained from arguing about assignments. (Working relationship with Authority) | 0 | 2 | 3 |
| 7. The prisoner discussed work/education related problems with peers/tutor, listened to peer's/tutor's point of view, encouraged discussion without argument and limited disruptive vocalizations. (Communication with Peers) | 0 | 2 | 3 |
| 8. The prisoner did the assignment share of the work/education assignment, remained in the assigned area until the end of the shift and engaged in no horseplay. (Teamwork with Peers) | 0 | 2 | 3 |
| 9. The prisoner kept a neat, clean and well groomed personal appearance, suitable for the assignment. | 0 | 2 | 3 |
| 10. The prisoner did job/education tasks according to the job/education description. | 0 | 2 | 3 |
| 11. The prisoner kept the work area neat and clean. | 0 | 2 | 3 |
| 12. The prisoner worked without constant supervision or direction when appropriate. | 0 | 2 | 3 |
| 13. The prisoner was willing to perform additional duties or stay beyond scheduled time. When asked, the prisoner did not argue or complain and performed additional assignments in a satisfactory manner. | 0 | 2 | 3 |

REVIEWED: Prisoner's Signature: _____ Date: _____    COLUMN TOTAL:
                                                            TOTAL SCORE:

I RECOMMEND:
☐ Entry Pay with 30 Days Conditional - Below Average Score 0-27    ☐ Status Pay Satisfactory - Average Score 28-34
☐ * Above Average Score 35-39    ☐ Bonus Pay for Food Service Workers    ☐ Termination    ☒ Close Supervision
*Fill in the appropriate information for school programming*    * No notations in the 3 or more exceptions column.

| 14. Academic CBI Modules in Progress ☐ N/A | Subject Letter/Number | / | / | / | / |
|---|---|---|---|---|---|
| 15. GED Test Version ❘ ❘ ❘ | I ❘ II ❘ III ❘ IV ❘ V | | Avg. Standard Score | Date Tested |
| 16. Voc Ed Program in Progress ☐ N/A | Duties (capital letter) Completed. If duty not complete, print duty letter & task (number) completed. | | | |
| 17. Pre-Release/Job Seeking Skills Completed ☐ YES ☐ NO | | | Date Completed: | |
| 18. Completed training to operate the following machinery or equipment: | | | Date Completed: | |
| 19. Attendance    Hours Attended | | Hours Missed | | |

COMMENTS AND RECOMMENDATIONS:
Prisoner McClaine Bey was warned about giving legal aid to prisoners that were not scheduled to receive legal aid from him. Prisoner McClaine Bey was giving the unscheduled legal aid to prisoners in the general population's law library work area. Prisoner McClaine Bey's work area is separate from the gerneral population's law library work area.

| Evaluator's Signature | Supervisor's Signature |
|---|---|
| Evaluator's Printed Name and Title | Supervisor's Printed Name and Title |
| C/O Renard | C/O Renard |

(ECF No. 56-4, PageID.326.)

As an initial matter, the undersigned finds that there are no genuine issues of material fact with respect to this element of McClaine-Bey's claim. Although McClaine-Bey characterizes the evaluation as "false and unauthorized," he concedes in his complaint that at the time CO Renard approached him on September 15, 2017, he was teaching a prisoner outside of the MDOC's Legal Writer Program how to conduct legal research. (ECF No. 1, PageID.3.) That is precisely what is reflected in CO Renard's work evaluation.

Furthermore, CO Renard's recommendation in the September 15, 2017 evaluation was close supervision. CO Renard did not recommend termination, nor did he give McClaine-Bey a negative performance score. And although McClaine-Bey was ultimately terminated and transferred, that did not occur until January of 2020 — two and a half years after CO Renard issued the relevant work evaluation. (ECF No. 1, PageID.10.) McClaine-Bey cannot plausibly contend that the work evaluation resulted in his termination. Instead, the evaluation had no discernible impact on McClaine-Bey.[3] As such, it is the undersigned's opinion that no reasonable juror could conclude that CO Renard's September 15, 2017 work evaluation constituted anything more than a "truly inconsequential," *de minimis* act. *Bell*, 308 F.3d at 603 (citing *Thaddeus-X*, 175 F.3d at 398).

---

[3] McClaine-Bey argues that CO Renard was not his supervisor, and that Renard was therefore unauthorized to evaluate McClaine-Bey's work. (ECF No. 63-1, PageID.474.) But whether authorized or not, the relevant inquiry is whether the evaluation was capable of deterring a person of ordinary firmness from engaging in protected conduct.

11

Because the undersigned finds that the September 15, 2017 work evaluation is insufficiently adverse, it is unnecessary for the undersigned to consider whether the work evaluation was motivated by McClaine-Bey's protected conduct. The undersigned recommends that the Court grant Defendants summary judgment as to McClaine-Bey's claim against CO Renard for authoring a work evaluation on September 15, 2017 (Claim One).

### ii. Claim Two – Retaliatory Misconduct Ticket (CO Bury)

McClaine-Bey next alleges that on May 17, 2018, CO Bury approached him in the library and told him to get up off the computer and leave. (ECF No. 1, PageID.6.) McClaine-Bey then threatened to file a grievance against Bury and Bury responded by stating: "I don't like your attitude and I didn't like that you wrote that grievance on Officer Renard, I'm going to get you fired!" (*Id.*) On the same date, CO Bury wrote McClaine-Bey a misconduct ticket for misusing the library computers. (*Id.*, PageID.7.)

Once again, Defendants do not contest that McClaine-Bey engaged in protected conduct. Instead, they argue that the misconduct ticket did not constitute an adverse action, and that CO Bury would have issued the misconduct ticket regardless of McClaine-Bey's alleged protected conduct. (ECF No. 56, PageID.295-298.)

### 1. Adverse Action

As stated above, an adverse action is an action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. Misconduct tickets are often recognized as adverse actions sufficient to support

a retaliation claim.  *See Brown v. Crowley,* 312 F.3d 782 (6th Cir. 2002) (finding that the issuance of a major misconduct ticket, which subjected the prisoner to a risk of segregation, loss of good time, and a longer term of incarceration, was sufficiently adverse); *Maben v. Thelen*, 887 F.3d 252, 266-267 (6th Cir. 2018) (finding that the issuance of a minor misconduct ticket was sufficiently adverse where the prisoner lost privileges and could have been confined to his cell).  To determine whether the issuance of a misconduct ticket constitutes an adverse action, courts consider "both the punishment [Plaintiff] could have faced and the punishment he ultimately did face."  *Maben*, 887 F.3d at 266.

Here, CO Bury issued McClaine-Bey a Class II misconduct ticket for "destruction or misuse of property."  (ECF No. 63-12, PageID.556.)  That misconduct reads as follows: "McClaine-Bey (165012) was directly observed using a computer in the law library.  McClaine-Bey had no staff authorization to use a computer while working the library.  Inmate ID'd by MDOC card.  Call out attached."  (*Id.*)  Ultimately, McClaine-Bey was not subject to any sanctions because the Hearing Officer found that he was not guilty of the charge.  (*Id.*, PageID.557.)  But per the CSJ-228 Misconduct Report form, McClaine-Bey could have been sanctioned with confinement to his cell, loss of privileges, extra duty, or even restitution.  (*Id.*)  In the opinion of the undersigned, these risks are sufficient to create a genuine issue as to whether receiving a misconduct ticket for destruction or misuse of property would deter a person of ordinary firmness from engaging in protected conduct.

13

Notably, Defendants do not contest that McClaine-Bey was exposed to the aforementioned risks upon CO Bury's issuance of the May 7, 2018 misconduct ticket. In fact, Defendants do not address the potential sanctions for a Class II misconduct ticket at all. Instead, Defendants argue that the misconduct ticket was not false because it was based on CO Bury's understanding of prison rules. (ECF No. 56, PageID.296.) Because it was not a false misconduct, Defendants argue, its issuance was not an adverse act. Defendants rely on the Sixth Circuit's recent, unpublished decision in *Bey v. Hissong*, No. 21-2883, 2022 WL 3969831, at *3-4 (6th Cir. Apr. 19, 2022) (finding that an insolence misconduct ticket did not constitute adverse action where the plaintiff failed to establish a genuine issue of fact as to whether he was insolent).

As an initial matter, the undersigned notes that in past published decisions, the Sixth Circuit has addressed the falsity of a misconduct ticket as an issue of causation, not adverse action. *See Eby*, 481 F.3d 434, 441 (6th Cir. 2007) ("The alleged falsity of the ticket, however, addresses causation. . . ."). Furthermore, the court has explained that when a plaintiff cannot establish that the relevant misconduct ticket is false, he can establish retaliatory motive by demonstrating that other inmates regularly engaged in the conduct for which he was charged without being subject to disciplinary action, or that he regularly engaged in the conduct for which he was charged prior to his protected conduct, but that he was only subject to disciplinary action after engaging in protected conduct. *Id.* at 442. This necessarily implies that a misconduct ticket need not be false to constitute adverse action. But even setting

14

this conflict aside, CO Bury's argument fails because the allegations in her misconduct ticket were false, and the ticket was unwarranted.  As a legal writer, McClaine-Bey did have authorization to be on the computer, and it is for that reason that McClaine-Bey was found not guilty of misusing government property.  (*See* ECF No. 63-12, PageID.557 ("Since Prisoners employed as Legal Writers are allowed access to the computers in the Law Library as a tool to do their job and without direct and continuous supervision, I find Prisoner McClaine-Bey Not-Guilty of this charge.").  In the opinion of the undersigned, CO Bury's assertion that she issued the relevant misconduct ticket based on her understanding of the prison rules, and not in an "attempt[ ] to frame McClaine-Bey for a rule violation," (ECF No. 56, PageID.296) creates a genuine issue of material fact that must be resolved by the finder of fact.  Accordingly, the undersigned turns to causation.

### 2.  Causal Nexus

To prevail on a retaliation claim, retaliatory motive "must be a 'but-for' cause [of the injury], meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1721 (2019).  At the summary judgment stage, the Sixth Circuit employs a burden-shifting approach with regards to the causal requirement:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant.  If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Blatter*, 175 F.3d at 399; *see also Eby,* 481 F.3d at 441.

As evidence that CO Bury was motivated by McClaine-Bey's protected conduct, McClaine-Bey alleges that CO Bury stated: "I don't like your attitude and I didn't like that you wrote that grievance on Officer Renard, I'm going to get you fired!" (ECF No. 1, PageID.6.) Defendants do not address this allegation. Instead, they argue that CO Bury decided to issue the misconduct ticket prior to McClaine-Bey's threat to file a grievance against her, and that she did so based on her belief, albeit mistaken, that McClaine-Bey was violating prison rules. (ECF No. 56, PageID.296 (citing ECF No. 56-5, PageID.329-330 (CO Bury's Declaration).)

The undersigned first notes that McClaine-Bey's alleged protected conduct is his May 7, 2018 threat to file a grievance against CO Bury *and* the grievance he filed against CO Renard in September of 2017. As such, at least one instance of protected conduct inarguably preceded CO Bury's decision to issue McClaine-Bey a misconduct ticket. But even if McClaine-Bey's only alleged protected conduct was his May 7, 2018 threat to file a grievance, CO Bury's declaration, in which she denies that McClaine-Bey ever threatened to file a grievance against her and states that she issued the misconduct purely based on her belief that McClaine-Bey was violating prison rules, does "little more than deny the allegations" put forth by McClaine-Bey. *Maben*, 887 F.3d at 268 (citing *Blatter*, 175 F.3d at 399). And the affidavit from Librarian Kemp, in which Kemp confirms that she told the COs that prisoners needed authorization to use the library in Kemp's absence but failed to inform the COs that legal writers had such authorization (ECF No. 56-6, PageID.334), does not preclude a finding that CO Bury had a retaliatory motive when she issued the misconduct. As

such, Defendants have not established that CO Bury would have taken the adverse action absent McClaine-Bey's protected conduct — they have created a genuine issue of material fact precluding summary judgment.

In sum, Defendants do not contest that McClaine-Bey engaged in protected conduct, and there are genuine issues of material fact bearing on whether CO Bury took a sufficiently adverse action against McClaine-Bey and whether the but-for cause of that adverse action was retaliatory motive.  The undersigned therefore recommends that the Court deny Defendants summary judgment as to McClaine-Bey's claim that CO Bury issued him a retaliatory misconduct ticket on May 7, 2018 (Claim Two).

### iii.   Claim Three – Retaliatory Work Evaluation (CO Renard)

McClaine-Bey next alleges that on April 12, 2019, CO Renard removed a sign reserving a computer for McClaine-Bey's use.  (ECF No. 1, PageID.7.)  McClaine-Bey then filed a grievance against CO Renard, and CO Renard filed another negative work evaluation.  (*Id.*)

In response to McClaine-Bey's second retaliation claim against CO Renard, Defendants again argue that the work evaluation was not an adverse action, as it did not recommend termination.  (ECF No. 56, PageID.289-290.)   Defendants further assert that CO Renard would have written the work evaluation regardless of McClaine-Bey's threat to file a grievance, negating the causation element of McClaine-Bey's retaliation claim.  (*Id.*, PageID.291-295.)  The April 12, 2019 work evaluation is shown below.

MICHIGAN DEPARTMENT OF CORRECTIONS

CSJ-363
REV. 09/06
4835-3363

**PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION**

| Prisoner Name (last) | (first) | (middle initial) | Prisoner No. | Lock No. | Institution Code |
|---|---|---|---|---|---|
| McClaine Bey | | | 165012 | G-1-145 | KCF |

| Assignment Name | | Assignment No. | Date Assigned | Date Evaluated |
|---|---|---|---|---|
| Legal Writer | | | 1/12/17 | 4/12/19 |

| Assignment Classification: | ☐ Student ☐ Unskilled ☐ Semi-Skilled ☐ Skilled ☐ Other | Race NW | Date Terminated | Will Take Back ☐ Yes ☐ No |
|---|---|---|---|---|

| Circle the number beside each statement which describes the prisoner's work/school assignment performance: | 3 or more exceptions | 1-2 exceptions | No exceptions |
|---|---|---|---|
| 1. The prisoner was on time. | 0 | 2 | ③ |
| 2. The prisoner came on the correct days. | 0 | 2 | ③ |
| 3. The prisoner followed all safety rules. | 0 | 2 | ③ |
| 4. The prisoner followed all other rules. | 0 | 2 | ③ |
| 5. The prisoner followed the assignment authority's instructions. | 0 | ② | 3 |
| 6. The prisoner cooperated with the assignment authority, followed the working chain of command and refrained from arguing about assignments. (Working relationship with Authority) | 0 | ② | 3 |
| 7. The prisoner discussed work/education related problems with peers/tutor, listened to peer's/tutor's point of view, encouraged discussion without argument and limited disruptive vocalizations. (Communication with Peers) | 0 | 2 | ③ |
| 8. The prisoner did the assignment share of the work/education assignment, remained in the assigned area until the end of the shift and engaged in no horseplay. (Teamwork with Peers) | 0 | 2 | ③ |
| 9. The prisoner kept a neat, clean and well groomed personal appearance, suitable for the assignment. | 0 | 2 | ③ |
| 10. The prisoner did job/education tasks according to the job/education description. | 0 | 2 | ③ |
| 11. The prisoner kept the work area neat and clean. | 0 | 2 | ③ |
| 12. The prisoner worked without constant supervision or direction when appropriate. | 0 | 2 | ③ |
| 13. The prisoner was willing to perform additional duties or stay beyond scheduled time. When asked, the prisoner did not argue or complain and performed additional assignments in a satisfactory manner. | 0 | 2 | ③ |

| REVIEWED: Prisoner's Signature: | Date: | COLUMN TOTAL: | 4 | 33 |
|---|---|---|---|---|
| I RECOMMEND: | | TOTAL SCORE: | | 37 |

☐ Entry Pay with 30 Days Conditional - Below Average Score 0-27   ☐ Status Pay Satisfactory - Average Score 28-34
☐ * Above Average Score 35-39   ☐ Bonus Pay for Food Service Workers   ☐ Termination   ☒ Close Supervision

| Fill in the appropriate information for school programming | *No notations in the 3 or more exceptions column. |
|---|---|

| 14. Academic CBI Modules in Progress ☐ N/A | Subject | | | | | |
|---|---|---|---|---|---|---|
| | Letter/Number | / | / | / | / | / |

| 15. GED Test Version | I | II | III | IV | V | Avg. Standard Score | Date Tested |
|---|---|---|---|---|---|---|---|

| 16. Voc Ed Program in Progress ☐ N/A | Duties (capital letter) Completed. If duty not complete, print duty letter & task (number) completed. |
|---|---|

| 17. Pre-Release/Job Seeking Skills Completed ☐ YES ☐ NO | Date Completed: |
|---|---|
| 18. Completed training to operate the following machinery or equipment: | Date Completed: |
| 19. Attendance | Hours Attended | | | | Hours Missed | | | |

COMMENTS AND RECOMMENDATIONS:

Prisoner McClaine Bey became argumentative and confrontational with me when I told him he could not reserve a specific ELL machine.

| Evaluator's Signature | Supervisor's Signature |
|---|---|
| Evaluator's Printed Name and Title | Supervisor's Printed Name and Title |
| % Renard | % Renard |

DISTRIBUTION: White – Record Office; Green – Assignment Supervisor; Canary – School Principal/Classification Director; Pink – RUM; Goldenrod – Prisoner

(ECF No. 56, PageID.56-15.)

Once again, the undersigned finds that there are no genuine issues of material fact with respect to this element of McClaine-Bey's claim against CO Renard. Although McClaine-Bey characterizes the evaluation as false and retaliatory, he

concedes in his complaint that CO Renard approached him on April 12, 2019, and that the two proceeded to argue about whether computers may be reserved for legal writers. (ECF No. 1, PageID.7.)  That is what is reflected in the work evaluation.

Furthermore, CO Renard's recommendation in the April 12, 2019 evaluation was close supervision.  CO Renard did not recommend termination, nor did he give McClaine-Bey a negative performance score.  In fact, CO Renard gave McClaine-Bey a favorable performance score.  And although McClaine-Bey was ultimately terminated and transferred, that did not occur until January of 2020 — nine months after CO Renard issued the relevant work evaluation.  (ECF No. 1, PageID.10.) McClaine-Bey cannot plausibly contend that the work evaluation resulted in his termination.  Instead, the evaluation had no discernible impact on McClaine-Bey.  As such, it is the undersigned's opinion that no reasonable juror could conclude that CO Renard's April 12, 2019 work evaluation constituted anything more than a "truly inconsequential," *de minimis* act.  *Bell*, 308 F.3d at 603 (citing *Thaddeus-X*, 175 F.3d at 398).

Because the undersigned finds that the April 12, 2019 work evaluation is insufficiently adverse, it is unnecessary for the undersigned to consider whether the work evaluation was motivated by McClaine-Bey's protected conduct.  The undersigned recommends that the Court grant Defendants summary judgment as to McClaine-Bey's claim against CO Renard for authoring a work evaluation on April 12, 2019 (Claim Three).

19

### iv. Claim Four – Retaliatory Work Evaluation and Transfer (Librarian Li, DW Brown, TC Woods)

McClaine-Bey finally alleges that on January 14, 2020, and on an unspecified date before January 14, 2020, he requested legal photocopies from the new KCF Librarian, Defendant Li.  (ECF No. 1, PageID.10.)  After Librarian Li denied the requests, McClaine-Bey threatened to file grievances against Li.  On January 14, 2020, Librarian Li responded by stating: "I'm not Officer Bury, I will have you transferred to remove you from your job."  (*Id.*)  With the assistance of Defendants DW Brown and TC Woods, McClaine-Bey was transferred out of KCF on January 16, 2020.  (*Id.*)  On the same day, Librarian Li issued a false and unfavorable work evaluation alleging that prisoners had complained about McClaine-Bey's coercive behavior.  (*Id.*; *see also* ECF No. 63-22 (January 16, 2020 Work Evaluation).)

In response to McClaine-Bey's final claim, Defendants do not contest that McClaine-Bey engaged in protected conduct or that Defendants took adverse actions against him.  Instead, Defendants assert that McClaine-Bey's claim fails on its third element.  According to Defendants, McClaine-Bey was transferred based on complaints that he was threatening and coercing other prisoners into doing legal work for others, not because he threatened to file a grievance against Librarian Li.  (ECF No, 56, PageID.298-299.)

Here, Defendants again provide affidavits denying McClaine-Bey's allegations.  In Librarian Li's affidavit, Li states that: "On January 2, 2020, two prisoners who worked in the library told me that prisoner McClaine-Bey #165012 . . . had threatened them and coerced one of them into doing legal work for other prisoners."  (ECF No.

56-8, PageID.340.)  Li states that he forwarded these complaints to DW Brown, but that he never asked DW Brown to terminate McClaine-Bey's employment or to transfer him from KCF.  (*Id.*)  In his affidavit, DW Brown confirms that on January 2, 2020, Li emailed Brown regarding the prisoners' complaints against McClaine-Bey. (ECF No. 56-12, PageID.350-351.)   Brown says that he was aware of similar complaints against McClaine-Bey from his time as a legal writer at Chippewa Correctional Facility.  (*Id.*, PageID.351.)  Because Brown believed that McClaine-Bey's conduct threatened "the safety, security, and good order" of KCF, Brown asked TC Woods to transfer McClaine-Bey.  (*Id.*)  TC Woods confirms as much in her affidavit, stating that she received an email from DW Brown asking her to transfer McClaine-Bey for threatening other prisoners on January 2, 2020.  (ECF No. 56-13, PageID.356.)  When Central Facilities Administration told her that it needed bed space at KCF, Woods took the opportunity to transfer McClaine-Bey pursuant to DW Brown's request.  (*Id.*)

In addition to their affidavits, Defendants provided their email communications, which are shown below.

| From: | Li, Yubao (MDOC) |
|---|---|
| To: | Brown, Michael G. (MDOC) |
| Subject: | McClaine 165012 G-1-45 |
| Date: | Thursday, January 2, 2020 1:34:36 PM |

Mr. Brown,

Two law library clerks brought it to my attention that legal writer MccLaine 165012 threatened them with violence in various occasions.

Yubao Li, Librarian
Kinross Correctional Facility
4533 W. Industrial Park Dr.
Kincheloe, MI 49788
Phone: 9064952282-1112171220

(ECF No. 56-9, PageID.344.)

| From: | Brown, Michael G. (MDOC) |
|---|---|
| To: | Woods, Kylie A. (MDOC) |
| Subject: | McClaine |
| Date: | Thursday, January 2, 2020 1:47:00 PM |

Prisoner staff in the law library have reported that legal writer McClaine 165012 has been squeezing, strong arming and threatening prisoners in need of his services.  This is the same accusations that occurred with him over at URF.  We need to move him as soon as possible please.

Michael Brown
Assistant Deputy Warden of Housing and Programs
Kinross Correctional Facility
4533 W. Industrial Park Drive
Kincheloe, MI 49788
(906) 495-2282 ext. 1112171211
(906) 630-1412 Work Cell
brownm41@michigan.gov

(ECF No. 56-10, PageID.346.)

In the opinion of the undersigned, this claim presents a close call.  If McClaine-Bey alleged only that he engaged in protected conduct on January 14, 2020, the undersigned would agree that the affidavits and emails are sufficient to establish

22

that retaliatory motive was not the but-for cause of McClaine-Bey's transfer or negative work evaluation; it is clear that Defendants had already discussed the library clerks' allegations against McClaine-Bey and the decision to transfer McClaine-Bey prior to his January 14, 2020 protected conduct.

The problem here is one of timing.  In McClaine-Bey's complaint, he alleged that he threatened to file a grievance against Librarian Li and then aired his complaints to DW Brown on one instance before January 14, 2020.  (ECF No. 1, PageID.9-10.)   While McClaine-Bey's complaint did not specify when this first instance of protected conduct occurred, the verified statement attached to McClaine-Bey's brief opposing summary judgment clarifies that it occurred *prior to January 2, 2020*.[4]  (ECF No. 63-1, PageID.468-471.)  Furthermore, McClaine-Bey alleged in his verified complaint that Librarian Li's January 16, 2020 work evaluation contained false and retaliatory allegations that McClaine-Bey was threatening other prisoners. (*Id.*, PageID.10.)  This undercuts Defendants' claim that the causal connection was broken.

Ultimately, in the opinion of the undersigned, McClaine-Bey's verified statements together with Defendants' affidavits and emails create a genuine issue of material fact as to whether retaliatory motive was the but-for cause of Defendants' decision to transfer McClaine-Bey and of Defendant Li's issuance of a negative work

---

[4]     Defendants point out that the grievances McClaine-Bey filed with respect to this claim did not explicitly discuss this first instance of protected conduct.  But the grievances did state "I told [Li] that, I will write a grievance on him about this matter and contact Deputy Mike Warden *again* about his behavior." (ECF No. 66-1, PageID.708-709.)

evaluation.  The undersigned therefore recommends that the Court deny Defendants summary judgment as to this claim (Claim Four).

### c.  Qualified Immunity

Defendants also assert that they are entitled to qualified immunity.  (ECF No. 56, PageID.300.)  This argument is largely redundant.  First, Defendants argue that they are entitled to summary judgment because they did not violate McClaine-Bey's First Amendment rights.  Then, Defendants argue that they are entitled to summary judgment because they are entitled to qualified immunity because they did not violate McClaine-Bey's First Amendment rights.  In accordance with the previous findings, the undersigned agrees that Defendant CO Renard is entitled to qualified immunity. But the undersigned finds that Defendants CO Bury, Librarian Li, DW Brown, and TC Woods are not entitled to qualified immunity at this stage of the case.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  Analyzing claims of qualified

immunity involves a two-pronged test.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the court must "determine if the facts alleged make out a violation of a constitutional right."  *Id.*  (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).  Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."  *Id.*  (citing *Pearson*, 555 U.S. at 232).  A court may address these prongs in either order.  *Id.*  (citing *Pearson*, 555 U.S. at 236).  A government official is entitled to qualified immunity if the court finds that there is no constitutional violation, or that the right at issue was not clearly established.  *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first prong of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The court considers the state of the law at the second prong.   As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct.  305, 308 (2015)).  As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, supra, at 741–742, 563 U.S. 731, 131 S.Ct. 2074, 179 L.Ed.2d 1149

25

(quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S. at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. 7, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff,* supra, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, supra, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, supra, at 309 (quoting *Anderson*, supra, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018).

Retaliating against prisoners for engaging in protected conduct violates their clearly established First Amendment rights. *Hill*, 630 F.3d at 472 (citing *Herron*, 203 F.3d at 415). Because the undersigned finds that there are no genuine issues of material fact with respect to McClaine-Bey's claim against CO Renard, and CO Renard did not violate McClaine-Bey's First Amendment rights, the undersigned finds that CO Renard is entitled to qualified immunity. Because the undersigned finds that there are genuine issues of material fact bearing on whether CO Bury,

Librarian Li, DW Brown, and TC Woods retaliated against McClaine-Bey for engaging in protected conduct, the undersigned respectfully recommends that Bury, Li, Brown, and Woods are not entitled to qualified immunity at this stage of the case.

## IV.    McClaine-Bey's Motion to Amend

The undersigned finally turns to McClaine-Bey's motion to amend his complaint. (ECF No. 61.) McClaine-Bey asserts that he has obtained "documentary evidence that will support the Plaintiff's retaliation claims to show the (1) protected conduct; (2) adverse actions; and (3) causal connections to one and two." (*Id.*, PageID.399.) The proposed amended complaint attached to McClaine-Bey's motion appears to be largely the same as his initial complaint, with the exception that it contains additional references to MDOC policies, and references the email communications between Defendants Li, Brown, and Woods on January 2, 2020. (*See* ECF No. 61-1.)

Defendants oppose McClaine-Bey's motion for a few reasons. First, they say that McClaine-Bey offered no justifications for moving to amend his complaint. (ECF No. 65, PageID.692.) Second, Defendants point out that McClaine-Bey's original complaint was filed more than two years ago, and that his motion to amend was filed after the close of discovery. (*Id.*, PageID.693.) Indeed, McClaine-Bey's motion to amend was filed after Defendants' motion for summary judgment. (*Id.*) Defendants say that the proposed amended complaint would therefore cause great prejudice.

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to

take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995).  The Court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996).

Although Defendants assert that permitting McClaine-Bey to amend his complaint as requested would cause undue prejudice at this stage of the case, they do not adequately support that contention.  True, courts consistently find that permitting plaintiffs to amend their complaint to add new claims or parties after the close of discovery is unduly prejudicial.  *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458-459 (6th Cir. 2001); *Davidson v. Arlington Cmty. Schs. Bd. of Educ.*, 847 Fed. Appx. 304, 311-312 (6th Cir. 2021).  But McClaine-Bey does not seek to add new claims or parties.  There is simply no reason to believe that the amendment is brought in bad faith or that it will result in undue delay or prejudice at this time.  Accordingly, the undersigned recommends that the Court grant McClaine-Bey's motion to amend, with the caveat that if the Court accepts the undersigned's recommendation to dismiss McClaine-Bey's claims against CO Renard, permitting McClaine-Bey to amend his complaint would not revive his claims against CO Renard.

## V.    Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment (ECF No. 55) as to McClaine-Bey's claims against CO

28

Renard (Claims One and Three) and deny Defendants' motion for summary judgment as to McClaine-Bey's claims against CO Bury, Librarian Li, TC Woods, and DW Brown (Claims Two and Four).  There are no genuine issues of material fact with respect to McClaine-Bey's claims against CO Renard; the work evaluations that CO Renard authored with respect to McClaine-Bey had no discernible impact on McClaine-Bey and therefore did not constitute adverse actions.  However, there are genuine issues of material fact with respect to McClaine-Bey's claims against CO Bury, Librarian Li, DW Brown, and TC Woods.

The undersigned further recommends that the Court grant McClaine-Bey's motion to amend his complaint (ECF No. 61), with the caveat that permitting the amendment would not revive McClaine-Bey's claims against CO Renard.

If the Court accepts this recommendation, CO Renard will be dismissed from this case.  McClaine-Bey's retaliation claims against CO Bury, Librarian Li, TC Woods, and DW Brown (Claims Two and Four) will remain.


Dated:  March 2, 2023                     /s/ *Maarten Vermaat*
                                          MAARTEN VERMAAT
                                          U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).